**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**


UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ERIC YOCKEY,

        Defendant.

No. CR09-4023-MWB


**ORDER CONCERNING
MAGISTRATE'S REPORT AND
RECOMMENDATION REGARDING
DEFENDANT'S MOTION TO
SUPPRESS**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *B.  Objections To Findings Of Fact* . . . . . . . . . . . . . . . . . . . . . . . . 11
        *1.  Officer Collison's actions as accidental* . . . . . . . . . . . . . 11
        *2.  Defendant Yockey's understanding of Miranda rights* . . . . 12
        *3.  Inventory search of telephone's memory* . . . . . . . . . . . . 13
        *4.  Plain view* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        *5.  Accidental viewing* . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        *6.  Collison's testimony* . . . . . . . . . . . . . . . . . . . . . . . . . 15
        *7.  Beginning of interview* . . . . . . . . . . . . . . . . . . . . . . . . 15
        *8.  Information obtained by Collison* . . . . . . . . . . . . . . . . . 16
        *9.  Attenuation of taint* . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        *10.  Totality of the circumstances* . . . . . . . . . . . . . . . . . . . 17
    *C.  Objections To Legal Conclusions* . . . . . . . . . . . . . . . . . . . . . . . 17
        *1.  Plain view of image on cellular telephone* . . . . . . . . . . . 17

      **2.**     *Objections regarding Detective Bertrand's interview* . . . . . . 20

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On April 22, 2009, an indictment was returned against defendant Eric Yockey, charging defendant Yockey with receiving and attempting to receive child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and possessing and attempting to possess child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). On July 9, 2009, defendant Yockey filed a motion to suppress. In his motion, defendant Yockey seeks to suppress photographic evidence obtained from his cellular telephone which was obtained without a search warrant. Defendant Yockey further seeks to suppress all statements he made to law enforcement personnel following the search of his cellular telephone on the ground that his statements are the fruits of an illegal search.

Defendant Yockey's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). After conducting an evidentiary hearing, on July 29, 2009, Judge Zoss filed a Report and Recommendation in which he recommends that defendant Yockey's motion to suppress be granted in part and denied in part. Judge Zoss concluded that the initial viewing of a pornographic image of

a naked pre-teen girl on the screen of defendant Yockey's cellular telephone was not the result of a search but occurred as a result of the jailer accidently causing the image to appear while attempting to turn off the cellular telephone. Judge Zoss further found that the arresting officer's subsequent search of defendant Yockey's cellular telephone for additional images was not a contemporaneous search incident to arrest and any testimony concerning that search should be suppressed. Judge Zoss also concluded that defendant Yockey's response to the arresting officer's question to him concerning his ownership of the cellular telephone must be suppressed on the grounds that his response was obtained without his having been informed of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Finally, Judge Zoss found that a police detective's questioning of defendant Yockey and his search of defendant Yockey's cellular telephone were not tainted by the arresting officer's actions because any taint from the arresting officer's unlawful conduct was sufficiently attenuated by other circumstances so as to purge it. Accordingly, Judge Zoss concluded that Yockey's statements to the police detective, as well as the cellular telephone and its contents, should not be suppressed. Therefore, Judge Zoss recommended that defendant Yockey's motion to suppress be granted in part and denied in part. After obtaining an extension of time, defendant Yockey filed his objections to Judge Zoss's Report and Recommendation on August 19, 2009. The prosecution has filed a timely response to defendant Yockey's objections.[1] The court,

---

[1]The prosecution has not objected to that portion of Judge Zoss's Report and Recommendation in which he recommends granting defendant Yockey's motion to suppress as to defendant Yockey's statement to Sioux City Police Officer Williams, as well as any testimony by Officer Williams, concerning the contents of defendant Yockey's cellular telephone. After conducting its review of the record, the court is not "'left with [a] definite and firm conviction that a mistake has been committed,'" and finds no reason to reject or modify Judge Zoss's recommendation with respect to Officer Williams's

(continued...)

therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Yockey's motion to suppress.

### B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> On December 11, 2008, at approximately 7:27 p.m., Sioux City Police Officer Jason Williams stopped a vehicle for an expired registration tag. Williams learned that the driver of the vehicle, Yockey, had a suspended operator's license. He placed Yockey under arrest and took him to the Woodbury County Jail for booking.
>
> At the jail, Yockey was searched by Officer Collison in accordance with the jail's standard booking procedures. As Collison was emptying Yockey's pockets, he discovered a "flip" style cell phone. The phone was closed, but the power was turned on. Standard jail procedures (*see* Gov't Ex. 1) required that the cell phone be turned off, so Collison opened the phone and attempted to turn it off. According to his testimony, he first pressed the "END" button, which ordinarily would have shut the phone off, but that did not work. He next tried to turn the phone off by pressing the right directional arrow, but he accidentally pressed some of the other buttons, which instead of turning the phone off, accessed pictures

---

[1] (…continued)

warrantless search of defendant Yockey's cellular telephone and his questioning of defendant Yockey. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Therefore, the court accepts this portion of Judge Zoss's Report and Recommendation and orders that defendant Yockey's motion to suppress is granted as to defendant Yockey's statement to Officer Williams, as well as any testimony by Officer Williams concerning the contents of defendant Yockey's cellular telephone.

stored on the phone. A pornographic image of a naked girl who appeared to be seven to ten years old appeared on the screen. Collison took the phone to Officer Williams, who was still in the booking area completing paperwork from the arrest, told him what he had observed, and gave the phone to him.

Williams looked at twenty to twenty-five pictures stored on the phone, and determined that several contained pornographic images of children. Williams had Yockey sign a "seized property sheet" acknowledging that Williams had seized the cell phone, and asked Yockey if the phone was his. Yockey responded that it was. Williams called his Sergeant, who directed him to contact Detective Bertrand. At about 8:00 p.m., Williams made contact with Bertrand and told him what he had observed, and arranged to deliver the phone to him. Bertrand told Williams not to turn the phone off because he was concerned it might be password protected. Williams met with Bertrand and gave him the phone.

Beginning at 9:08 p.m., Bertrand interviewed Yockey at the Woodbury County Jail. At the outset of the interview, Bertrand introduced himself and advised Yockey of his *Miranda* rights. Yockey acknowledged that he understood his rights, and agreed to talk with Bertrand. Bertrand told Yockey he had not yet examined the cell phone, and asked what he would find on the phone. Yockey responded that he would find about 143 pornographic images. Bertrand asked for permission to examine the phone, and Yockey gave it. Bertrand looked in the "pictures" section of the phone's memory, where he discovered numerous pictures containing pornographic images of children. Yockey then made several incriminating statements.

Report and Recommendation at pp. 2-3 (footnotes omitted). Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by defendant Yockey.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate."

*Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review"

if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less

deferential standard.[2]

---

[2] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

As noted above, defendant Yockey has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Yockey's motion to suppress.

### B. Objections To Findings Of Fact

### 1. Officer Collison's actions as accidental

Defendant Yockey initially objects to Judge Zoss's finding that Officer Collision "accidentally" accessed photographs on defendant Yockey's cellular telephone. Report and Recommendation at 2. The record fully supports Judge Zoss's factual finding that Officer Collison accidentally came across a pornographic image of a naked pre-teen girl on the screen of defendant Yockey's cellular telephone while attempting to turn it off. Officer Collision testified that this is precisely what occurred. Tr. at 13-15. The circumstances of this case fully support that finding. There was no motive for Officer Collison to engage in a rogue search of defendant Yockey's cellular telephone for stored photographs. Defendant Yockey was arrested for driving on a suspended drivers license. He was not a person of interest to Detective Bertrand or Officer Collison until the images were found on defendant Yockey's cellular telephone. Tr. at 72. In addition, while it is unclear from the record precisely how Officer Collison accessed the photographs on defendant Yockey's cellular telephone, the type of cellular telephone owned by defendant Yockey, and how photographs on such a cellular telephone may be accessed, heightens the plausibility of Officer Collison's testimony that he accidentally came across the image. Both Detective Bertrand and defendant Yockey's own expert witness, Terry Anderson, testified that the type of cellular telephone owned by defendant Yockey, a Samsung Model U340, permits a user to access photographs stored on it through three different procedures. Tr. at 65-67, 88-93. One of the three methods requires that the user depress a camera icon

on the right side of the telephone and then depress a "soft key" located on the face of the telephone. Tr. at 67, 92-93. The soft key is located just above the key used for powering the telephone on or off. As a result, a user of such a cellular telephone could, in attempting to power off the unit, inadvertently access photographs stored on it by unknowingly squeezing the camera icon while holding the telephone and then mistakenly depressing the soft key instead of the power key. Accordingly, upon de novo review of the record, the court finds that Officer Collison accidentally came across the pornographic image of the naked pre-teen girl on the screen of defendant Yockey's cellular telephone while attempting to turn it off. Therefore, defendant Yockey's objection is overruled.

      **2.**     *Defendant Yockey's understanding of Miranda rights*

Defendant Yockey also objects to Judge Zoss's finding that defendant Yockey understood his *Miranda* rights, and waived those rights. Report and Recommendation at 3. An audio recording of Detective Bertrand's interview with defendant Yockey was admitted into evidence at the evidentiary hearing. *See* Gov't Ex. 2. On that recording, prior to the commencement of his interview with defendant Yockey, detective Bertrand clearly informs defendant Uockey of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). After doing so, Detective Bertrand asks defendant Yockey if he has any questions. In response, defendant Yockey can be heard to say "no." Detective Bertrand then proceeds to ask defendant Bertrand if he is willing to speak with him. At this juncture, the shuffling of papers obscures defendant Yockey's response. Detective Bertrand testified that defendant Yockey gave a nonverbal "head nod" in response to his question, which Detective Bertrand understood to be defendant Yockey's consent to speak with him. Tr. at 57. There is no evidence in the record contradicting Detective Bertrand's testimony. Indeed, the court's own review of the audio recording supports Judge Zoss's finding on this point. The interview was conducted in normal

conversational tones in what sounds like a relaxed atmosphere. Detective Bertrand makes no threats or promises nor does he engage in any intimidation, shouting, or employ pressure tactics or psychological pressure. Defendant Yockey is reasonably relaxed and composed. He does not sound in any way confused. He speaks clearly and understands all that is said to him. Therefore, this objection is also overruled.

### 3. *Inventory search of telephone's memory*

Defendant Yockey next objects to Judge Zoss's finding that: "There simply was no need to search the cell phone's memory to accomplish the purposes of the inventory search. Under the circumstances in this case, such a search was not a proper part of the inventorying process." Report and Recommendation at 5. Defendant Yockey objects to this finding because "despite finding that under the circumstances in this case, the search was not a proper inventory process, the Magistrate failed to conclude that Collison's search of the cell phone was violative of the Fourth Amendment." Defendant's Obj. at 6. The objected to portion of the Report and Recommendation is found in Judge Zoss's analysis of Officer Collision's actions. Judge Zoss concluded that Officer Collison had the right, as part of a proper inventory search of defendant Yockey, the right to turn defendant Yockey's cellular telephone off as part of the jail's standard booking procedures. Judge Zoss then made the objected to observation that: "There simply was no need to search the cell phone's memory to accomplish the purposes of the inventory search. Under the circumstances in this case, such a search was not a proper part of the inventorying process." Report and Recommendation at 5. Judge Zoss proceeded to then discuss whether Officer Collison had searched the cellular telephone's memory, as argued by defendant Yockey, or had inadvertently caused the pornographic image to appear while attempting to turn off the cellular telephone, the proposition advanced by the prosecution.

Thus, defendant Yockey's objection at this juncture is not to Judge Zoss's factual finding, that there was no need to search the cellular telphone's memory to accomplish the purposes of the inventory search, but to his factual finding that Officer Collison accidentally came across the pornographic image of a naked pre-teen girl on the screen of defendant Yockey's cellular telephone while attempting to turn it off and not during an inventory search of the cellular telephone's memory. Defendant Yockey's objection is overruled for the same reasons discussed above concerning defendant Yockey's first factual objection.

### 4.    *Plain view*

Defendant Yockey next objects to this portion of the Report and Recommendation:

> The question here is whether the [sic] Collison observed the image of child pornography on the cell phone by accident or on purpose. The plain view exception is not available to an officer who violates the Fourth Amendment in arriving at the place from which the evidence can be plainly viewed. *United States v. Wilson*, 565 F.3d 1059, 1064 (8th Cir. 2009); *see also United States v. Banks*, 514 F.3d 769, 773 (8th Cir. 2008). Collison did not have the right to rummage through the phone's memory looking for evidence of a crime. If he caused the image to appear accidentally, then the plain view exception applies; if he did it on purpose, then the exception does not apply.

Report and Recommendation at 6. The basis for defendant Yockey's objection here is his contention that Officer Collison "rummaged through the cell phone's contents to find the various photographs." Defendant's Obj. at 7. The objected to portion of the Report and Recommendation does not contain a factual finding but is instead Judge Zoss's framing of the plain view issue concerning Collison's actions. Therefore, this objection is also denied.

### 5.    *Accidental viewing*

Defendant Yockey further objects to Judge Zoss's finding that: "The court agrees that Collison's explanation is unlikely. However, after carefully considering the evidence, the court finds this is exactly what happened. " Report and Recommendation at 7. For the reasons discussed above concerning defendant Yockey's first factual objection, the court concludes that Officer Collison accidentally caused the pornographic image of the naked pre-teen girl on the screen of defendant Yockey's cellular telephone to appear while attempting to turn it off. Therefore, this objection is also overruled.

### 6.    *Collison's testimony*

Defendant Yockey next objects to this segment of the Report and Recommendation: "Accordingly, the court finds that Collison's testimony concerning Yockey's booking, and the image Collison viewed on the cell phone during the booking process, should not be suppressed." Report and Recommendation at 8. The objected to portion of the Report and Recommendation does not contain a factual finding but is instead Judge Zoss's legal recommendation not to suppress Officer's Collision testimony or the initial image. Therefore, this objection is also overruled.

### 7.    *Beginning of interview*

Defendant Yockey further objects to Judge Zoss's finding that: "Bertrand began his interview of Yockey by advising him of his *Miranda* rights and asking him some background questions." Report and Recommendation at 13. Defendant Yockey objects to this finding because "Mr. Yockey did not acknowledge his understanding of any *Miranda* warnings and his statements were not knowingly made." Defendant's Obj. at 7. The objected to factual finding is not a factual finding at all-merely a recitation of what occurred. Defendant Yockey admits to having been given his *Miranda* rights and acknowledges that he was asked questions because he alleges that the answers to those

questions should be suppressed. From the court's review of the audio recording of Detective Bertrand's interview of defendant Yockey, Detective Bertrand commences the interview by providing defendant Yockey with his *Miranda* warnings. After providing those warnings and obtaining Yockey's consent, Detective Bertrand asks defendant Yockey background questions regarding his name, address, telephone phone number and place of employment. Therefore, this objection is also overruled.

### 8. *Information obtained by Collison*

Defendant Yockey further objects to the following segment of the Report and Recommendation:

> The information provided by Collison was obtained independently and lawfully by Collison before Williams obtained any information, *see United States v. Alvarez-Manzo*, ___ F.3d ___, ___, 2009 WL 1905437, at *6 (8th Cir., July 6, 2009), and Collison's information was adequate, by itself, to explain and justify Bertrand's questioning of Yockey and search of Yockey's phone. *But see United States v. Carney*, 2007 WL 1864633, at *16-17 (W.D. Pa., June 27, 2007) (finding taint not attenuated on facts similar to, but distinguishable from, the present case).

Report and Recommendation at 14. Defendant Yockey contends that this portion of the Report and Recommendation is not supported by the record. This portion of the Report and Recommendation does not contain a straight factual finding, but instead contains a legal conclusion, based on prior factual findings, concerning whether Collision's viewing of the images on defendant Yockey's cellular telephone was conducted independently and lawfully before Williams took possession of the cellular telephone. Therefore, this objection is also overruled.

### 9. *Attenuation of taint*

Defendant Yockey also objects to the following:

The court finds that any taint from Williams's unlawful conduct was sufficiently attenuated by other circumstances, and Yockey's statement to Bertrand, and the contents of the cell phone, should not be suppressed.

Report and Recommendation at 15. Defendant Yockey objects to this part of the Report and Recommendation on the ground that is not supported by the record. This segment, again, is not a factual finding, but Judge Zoss's legal conclusion regarding whether Officer Williams's illegal conduct was sufficiently attenuated by intervening circumstances to purge the taint of that conduct. Therefore, this objection to the Report and Recommendation is also denied.

### 10. Totality of the circumstances

Defendant Yockey's final factual objection to Judge Zoss's Report and Recommendation is that it "fails to find that under the factual totality of the circumstances present in this case, the unlawful search and seizure of the Samsung cell phone in Mr. Yockey's possession should be suppressed under the Fourth Amendment principles relating to the actions of Officer Collison, and that any statement and/or admissions made by Mr. Yockey following that search and seizure should also be suppressed." Defendant's Obj. at 8. This objection is not to a specific factual finding but, instead, goes to Judge Zoss's ultimate legal conclusion regarding whether to suppress photographic evidence obtained from defendant Yockey's cellular telephone as well as statements he made to law enforcement personnel. Therefore, this objection to the Report and Recommendation is also denied.

## C. Objections To Legal Conclusions

### 1. Plain view of image on cellular telephone

Defendant Yockey's first three legal objections to Judge Zoss's Report and

Recommendation concern Judge Zoss's conclusion that Officer Collison did not search defendant Yockey's cellular telephone, but inadvertently caused an image containing child pornography to come into his "plain view" while he was attempting to turn the telephone off. Defendant Yockey's objections all raise the issue of whether Officer Collison's finding of the pornographic image on defendant Yockey's cellular telephone falls within the "plain view" exception to the search warrant requirement.

In *Coolidge v. New Hampshire,* 403 U.S. 443, 465 (1971), the Supreme Court recognized that "under certain circumstances the police may seize evidence in plain view without a warrant." The Supreme Court's decision in *Coolidge* was grounded on its prior decision in *Harris v. United States,* 331 U.S. 145 (1947), in which the Court held:

> If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated.

*Id*. at 155. The "plain view" test was refined in *Horton v. California,* 496 U.S. 128, 137 (1990). Under the plain view doctrine,

> Police may seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point, 3) where the incriminating character of the item is immediately apparent. *Horton v. California,* 496 U.S. 128, 136-37, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). The first requirement, that the objects be in plain view, "is often considered an exception to the general rule that warrantless searches are presumptively unreasonable. . . ." *Id*. at 133-34, 110 S. Ct. 2301. The third requirement, that the incriminating character of an item be immediately apparent, is satisfied when police have "probable cause to associate the property with criminal activity." *United States v. Raines,* 243 F.3d 419, 422 (8th Cir. 2001) (internal quotation marks omitted). Probable cause is

required to justify the seizure of an item that police observe in plain view. *Arizona v. Hicks,* 480 U.S. 321, 326-27, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987). Ultimately, the standard by which a warrantless search and seizure is reviewed under the Fourth Amendment is reasonableness. *Id.*

*United States v. Banks*, 514 F.3d 769, 774 (8th Cir. 2008) (footnote omitted); *see also United States v. Khabeer*, 410 F.3d 477, 482 (8th Cir. 2005); *United States v. Bustos-Torres,* 396 F.3d 935, 944 (8th Cir. 2005); *United States v. Reinholz,* 245 F.3d 765, 777 (8th Cir. 2001); *United States v. Weinbender,* 109 F.3d 1327, 1330 (8th Cir. 1997). Each of the three elements of the plain view doctrine have been established in this case with respect to Officer Collison's seizing of the pornographic image on defendant Yockey's cellular telephone. Defendant Yockey concedes that Officer Collison had the right to seize his cellular telephone in connection with a property inventory following his arrest, *see Illinois v. Lafayette*, 462 U.S. 640, 646 (1983), and that once the image was revealed, its incriminating nature was immediately apparent. *See Texas v. Brown*, 460 U.S. 730, 741-42 (1983). Defendant Yockey's objections center on the first element. He contends that the pornographic image on his cellular telephone was not in plain view until after Officer Collison conducted a warrantless search of his cellular telephone under the guise of turning the telephone off for inventory purposes. Defendant Yockey's objections turn on Judge Zoss's factual finding, which the court has affirmed above, that Officer Collison, in attempting to turn off the cellular telephone pursuant to inventory procedure, inadvertently depressed the "camera" function button on the right side of the cell phone and then the "soft key" on the left side of the face of defendant Yockey's cellular telephone causing the pornographic image of the child to be displayed. Because the court has affirmed Judge Zoss's factual finding on this point, the court further concludes that Officer Collision's actions in attempting to turn off the cellular telephone do not rise to the level of search.

Accordingly, the court concludes that the pornographic image Officer Collision saw on defendant Yockey's cellular telephone falls within the plain view exception and will not be suppressed. Therefore, defendant Yockey's objections to this portion of Judge Zoss's Report and Recommendation are overruled.

### 2.    *Objections regarding Detective Bertrand's interview*

Defendant Yockey's remaining legal objections all pertain to Judge Zoss's legal conclusions concerning Detective Bertrand's interview of him. First, defendant Yockey objects to Judge Zoss's legal conclusion that any taint from Officer Williams's unlawful conduct was sufficiently attenuated by other circumstances so as to purge it.

In discussing "the fruit of the poisonous tree" doctrine and the purging of illegal taint, the Eighth Circuit Court of Appeals recently observed that:

> In a "fruit of the poisonous tree" doctrine case, a constitutional violation has occurred, and the issue is whether law enforcement obtained evidence "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

*United States v. Alvarez-Manzo* , 570 F.3d 1070, 1077 (8th Cir. 2009). In determining whether evidence is tainted by a prior violation of constitutional rights, the court is required to ask "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun,* 371 U.S. at 488. In conducting this fact-sensitive inquiry, the Eighth Circuit Court of Appeals has instructed courts to consider the following three factors: "(1) the giving of *Miranda* warnings, (2) the temporal proximity of the illegal [conduct] and the alleged consent, (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." *United States v. Lakoskey*, 462 F.3d 965, 975 (8th Cir. 2006)

(internal quotation marks and citation omitted). Based on an examination of these factors, the court agrees with Judge Zoss's conclusion that any taint from Williams's illegalities was adequately attenuated. First, Detective Bertrand provided defendant Yockey with *Miranda* warnings before commencing his interview with him. Second, Williams's conduct was not flagrant, but based on his incorrect supposition that such a search was permitted as a search incident to arrest. Third, while Officer Williams's illegal conduct occurred a little more than an hour before Detective Bertrand started his interview with defendant Yockey, Officer Williams's illegal conduct was not the precipitating event that caused Detective Bertrand to seek to interview defendant Yockey. That event was Officer Collison's original finding of an image of child pornography on defendant Yockey's cellular telephone. Judge Zoss found, and the court agrees, that Detective Bertrand would have sought to interview defendant Yockey and asked for permission to search his cellular telephone absent any information about Williams's search of the cellular telephone and his questioning of defendant Yockey. Moreover, there is no evidence that Detective Bertrand employed any information obtained from Officer Williams during the course of his interview of defendant Yockey to his advantage. Accordingly, the court concludes that defendant Yockey's voluntary consent to speak with Detective Bertrand and allow him to search his cellular telephone was sufficiently an act of free will to purge the taint of Officer Williams's illegal conduct. Therefore, this objection is overruled.

Defendant Yockey's final objection is that Judge Zoss should have found that he did not knowingly, voluntarily, and intelligently waive his Constitutional rights before speaking to Detective Bertrand. This issue, however, was not raised in defendant Yockey's motion, his brief, or before Judge Zoss at the time of the evidentiary hearing. Accordingly, this issue is not properly before the court and his objection on this ground is overruled.

### III.  CONCLUSION

Therefore, for the reasons set out above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **grants in part and denies in part** defendant Yockey's Motion To Suppress.  Defendant Yockey's motion is denied as to his statements to Detective Bertrand, his cellular telephone and its contents, as well as  Officer Collison's testimony concerning defendant Yockey's booking, and the image Officer Collison viewed on defendant Yockey's cellular telephone during the booking process. Defendant Yockey's motion is granted as to defendant Yockey's statement to Officer Williams, as well as any testimony by Officer Williams, concerning the contents of defendant Yockey's cellular telephone.

**IT IS SO ORDERED.**

**DATED** this 28th day of August, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA